(30 Misc. Rep. 698.)

### RUDOLPH v. ACKERMAN.

(Supreme Court, Special Term, Westchester County. March, 1900.)

STREETS—DEDICATION—REVOCATION—SUBSEQUENT STATUTE.

A village association purchased land in the name of its president. The village was platted with streets 60 feet wide, and the plat approved by the association, and filed with the county clerk. Afterwards the association passed a resolution authorizing each member to set his fence 5 feet on the sidewalk. Lots were deeded to the members in accordance with the plat, but fenced and used for 50 years in accordance with the resolution. *Held*, that the resolution revoked any dedication made by the plat, and hence a subsequent statute (Laws 1854, c. 114), making the village a separate road district, and its streets public highways 60 feet wide, accepted but 50 feet of the streets for public use.

Action by Henry Rudolph, Jr., against Mathilde Ackerman to restrain the continuance and compel the removal of an obstruction to a public highway. Complaint dismissed.

Joseph Wood, for plaintiff.

George C. Appell, for defendant.

SMITH, J. Both parties concede that the plaintiff cannot succeed in this action unless he proves that a portion of defendant's store is built upon the public highway. Two questions have been most elaborately and ably discussed by counsel: First, did the premises in controversy ever become a part of the public highway? and, second, if so, has such part ceased to become a highway by reason of abandonment or nonuser? It is not necessary to consider the second question discussed, because I am convinced, after a careful consideration of the case, that no part of the premises built upon by the defendant ever became a portion of the public highway. In 1850 the Home Industrial Association No. 1 of New York City, a nonincorporated body of about 1,000 members, made up a general fund with which they purchased 375 acres of land, being a portion of the present city of Mt. Vernon. Mr. John Stevens was elected president and purchasing agent of the association, and on their behalf took the title to the land purchased. On April 18, 1851, a map of the land and plan of streets, made by a surveyor, was presented, which was afterwards approved by the association, and filed June 7, 1851, in the county clerk's office of Westchester county. Upon this map all streets were laid out 60 feet in width. Upon all the authorities, the filing of this map was evidence of an intent to dedicate the streets 60 feet in width to public use. On September 26, 1851, it was resolved by the association "that each member be privileged to set his fence five feet on the sidewalk, still leaving the sidewalk

ten feet clear." On November 1, 1851, Mr. Stevens conveyed to the individual members of the association the 1,000 lots into which the land had been divided as laid down on said map. At the time of the passage of the last resolution referred to and of the making of the transfer, none of the streets had been actually worked or actually laid out, except on the map. It is substantially proven that the lot owners without exception availed themselves of the provision or privilege of fencing in the five feet in front of their lots, in accordance with their resolution, and the public authorities have never at any time entered upon, worked, used, or assumed control of the strip in question. If the filing of the map be considered in itself a dedication of the streets laid out thereon, I think the passage of the resolution of September 26, 1851, and the acts of the lot owners thereunder in retaining possession of and fencing the strip of five feet before there was any acceptance by express resolution of or actual user by the public authorities or the passage of a legislative act recognizing such dedication, amounted to a revocation of the dedication. Eckerson v. Village of Haverstraw, 6 App. Div. 105, 39 N. Y. Supp. 635.

The plaintiff claims that the resolution of September 26, 1851, has no legal effect because the association did not have the legal title to the property, and such resolution could not change the map filed. It is true the association did not have the legal title, but its members were the equitable owners. It was in pursuance of their resolution that the map was filed, and it was in pursuance of their resolution that the streets were physically narrowed. To set out a fence five feet was clearly inconsistent with the use of the land inclosed for highway purposes, and indicated conclusively a change of intent to allow the whole width of the street to be used as a public highway. On April 1, 1854, the legislature of the state of New York passed an act known as "Chapter 114 of the Laws of 1854," the seventh section of which reads as follows: "The said village of Mount Vernon shall be and is hereby constituted a separate road district; and all the streets and avenues in said village shall be considered public highways of the width of sixty feet." Plaintiff claims that this legislative declaration is conclusive as an acceptance of the streets as laid down on the original map. It would undoubtedly have that effect unless there had been an effective revocation of the dedication before the act was passed. It is well settled by authority that the legislative act can have no greater effect than to accept what has been relinquished by the private owner for public purposes. If my view is correct, the tender or inchoate dedication by the association had been effectively revoked before the passage of the legislative act. The practical construction placed upon the physical situation for nearly 50 years by the landowners and the public authorities must now control, and that construction is adverse to the claim of the plaintiff, and for that reason he has not made out a cause of action against the defendant. The complaint must be dismissed, with costs.

Complaint dismissed, with costs.